UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELFA PEREZ,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　　　Defendant. | Case No. CV 15-807 JC<br><br>MEMORANDUM OPINION |

## I. SUMMARY

On February 4, 2015, Elfa Perez ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's applications for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; February 5, 2015 Case Management Order ¶ 5.

///

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On July 8, 2011, plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits. (Administrative Record ("AR") 157, 164). Plaintiff asserted that she became disabled on December 31, 2010, due to mental impairment, depression, sadness, anger, and headaches. (AR 192). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel and assisted by a Spanish language interpreter) on January 10, 2013. (AR 24, 39-57).

On January 30, 2013, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 24-34). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: major depressive disorder and generalized anxiety disorder (AR 27); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 27-28); (3) plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, but was limited to work activity requiring simple, repetitive tasks (AR 28); (4) plaintiff could perform her past relevant work as a maid (AR 33); (5) in the alternative, under the framework of Section 204.00 in the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that plaintiff could perform (AR 33-34); and (6) plaintiff's allegations regarding the intensity, persistence, and limiting effects of her subjective symptoms were not entirely credible (AR 28-31).

The Appeals Council denied plaintiff's application for review. (AR 1).

///
///

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work

experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

### B. Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Courts review only the reasons provided in the ALJ's decision, and the decision may not be affirmed on a ground upon which the ALJ did not rely. See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)). To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001)

(quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  A denial of benefits must be upheld if the evidence could reasonably support either affirming or reversing the ALJ's decision.  Robbins, 466 F.3d at 882 (a court may not substitute its judgment for that of the ALJ) (citing Flaten, 44 F.3d at 1457); see also Molina, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.") (citation omitted).

Even when an ALJ's decision contains error, it must still be affirmed if the error was harmless.  Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014).  An ALJ's error is harmless if (1) it was inconsequential to the ultimate nondisability determination; or (2) the ALJ's path may reasonably be discerned, even if the ALJ explains the ALJ's decision with less than ideal clarity.  Id. (citation, quotation marks, and internal quotations marks omitted).

## IV. DISCUSSION

### A. The ALJ Properly Evaluated Plaintiff's Mental Impairments

#### 1. Pertinent Law

At step four of the sequential evaluation process, the Commissioner may deny benefits if a claimant possesses the residual functional capacity to perform her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f); see also Pinto v. Massanari, 249 F.3d 840, 845 (2001) ("At step four, claimants have the burden of showing that they can no longer perform their past relevant work.") (citations omitted).  Residual functional capacity represents "the most [a claimant] can still do despite [his or her] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In determining a claimant's residual functional capacity, an ALJ is required to consider all relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.  Robbins, 466 F.3d at 883

(citations omitted); see 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (residual functional capacity is assessed "based on all of the relevant evidence in [the] record.").

### 2. Pertinent Facts

On August 31, 2011, Dr. Laja Ibraheem, a state agency consultative psychiatrist, performed a Complete Psychiatric Evaluation of plaintiff, which included a mental status evaluation. (AR 286-89). Based on such evaluation, Dr. Ibraheem opined, in pertinent part, as follows:

> [Plaintiff] would be able to focus attention adequately and follow one- and two-part instructions. She would have zero to minimal difficulty being able to remember and complete simple tasks, tolerate the stress inherent in the work environment, maintain regular attendance, and work without supervision. [Plaintiff] would have zero to minimal difficulty being able to interact with supervisors, co-workers, and/or the general public.

(AR 289).

On October 7, 2011, Dr. Jay S. Flocks, a non-examining, state agency psychiatrist reviewed plaintiff's medical records and, as the ALJ noted, concluded that plaintiff would be able to perform simple, repetitive tasks. (AR 32) (citing Exs. 1A at 6 [AR 63], 2A at 6 [AR 73]). As the ALJ also noted, on January 12, 2012, Dr. Sidney Gold, a non-examining, state agency psychiatrist, affirmed the finding that plaintiff would be able to perform simple, repetitive tasks. (AR 32) (citing Exs. 5A at 5 [AR 84], 6A at 5 [AR 95]).

///
///
///
///
///

### 3. Analysis

Although not entirely clear,[1] Plaintiff's Motion appears to assert that the ALJ's residual functional capacity assessment failed properly to consider limitations related to plaintiff's mental impairments. (Plaintiff's Motion at 3-5, 10-11). A reversal or remand on this basis is not warranted.

First, substantial evidence supports the ALJ's assessment that plaintiff had the mental residual functional capacity to perform simple, repetitive tasks. (AR 28). Dr. Ibraheem's opinions were supported by the psychiatrist's independent examination of plaintiff (AR 288), and thus, even without more, constituted substantial evidence supporting the ALJ's residual functional capacity assessment. See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). The opinions of the state agency reviewing psychiatrists also constituted substantial evidence supporting the ALJ's decision since they were consistent with Dr. Ibraheem's opinions and underlying independent mental status examination. See Tonapetyan, 242 F.3d at 1149 (holding that opinions of nontreating or nonexamining doctors may serve as substantial evidence when consistent with independent clinical findings or other evidence in the record); Andrews, 53 F.3d at 1041 ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it").

///

---

[1] For the first claim in Plaintiff's Motion, the heading asserts that "The ALJ properly considered the Claimant's Mental Impairment," and the text which follows generally reviews legal principles related to evaluation of mental impairments, with little or no argument regarding any error except a general assertion that "[i]t is improper for the ALJ to focus on the period between the plaintiff's various episodes." (Plaintiff's Motion at 3) (emphasis added).

To the extent plaintiff argues that the ALJ's residual functional capacity assessment erroneously failed to account for the mental restrictions the ALJ identified at steps two/three (*i.e.*, mild restriction in activities of daily living, and moderate difficulties in social functioning, concentration, persistence, and pace) (Plaintiff's Motion at 10-11) (citing AR 27), plaintiff's argument lacks merit.  As the ALJ noted (AR 28), the criteria used at steps two and three to rate the severity of mental impairments are not the same as those used to assess residual functional capacity at steps four and five.  See, e.g., Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007) ("The step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five."); Social Security Ruling ("SSR") 96-8p,*4 ("The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an [residual functional capacity] assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.  The mental [residual functional capacity] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].").  To the extent plaintiff suggests that the medical evidence otherwise reflects more severe mental limitations (Plaintiff's Motion at 3-5), this Court will not second guess the ALJ's reasonable determination that it does not, even if such evidence could give rise to inferences more favorable to plaintiff.  See Robbins, 466 F.3d at 882 (citation omitted).

Accordingly, a remand or reversal on this basis is not warranted.

///
///

8

## B. The ALJ Properly Evaluated Plaintiff's Credibility

### 1. Pertinent Law

When a claimant provides "objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged," and there is no affirmative finding of malingering, the ALJ may discount the credibility of the claimant's subjective complaints only by "offering specific, clear and convincing reasons for doing so." Brown-Hunter v. Colvin, __ F.3d __, 2015 WL 6684997, *5 (9th Cir. Nov. 3, 2015) (citation and internal quotation marks omitted). This requirement is very difficult to meet. See Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (citation omitted).

An ALJ's credibility determination must be specific enough to permit a reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's subjective complaints. Brown-Hunter, 2015 WL 6684997, at *5 (citation and quotation marks omitted). Consequently, an ALJ must specify the testimony he or she finds not credible, provide "clear and convincing reasons" why the particular testimony lacks credibility, and identify the specific evidence which undermines the claimant's subjective complaints. See, e.g., id. at *1, *5-*6 (legal error where ALJ failed to identify claimant's testimony found not credible and failed to "link that testimony to the particular parts of the record supporting her non-credibility determination") (citing Burrell v. Colvin, 775 F.3d 1133, 1139 (9th Cir. 2014)). "General findings are insufficient[.]" Id. at *5 (citations and quotation marks omitted). Nonetheless, if the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citation omitted); see also Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (Evaluation of a claimant's credibility and resolution of conflicts in the testimony are solely functions of the Commissioner.) (citation omitted).

///

An ALJ may consider "a range of factors" when assessing credibility, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations and quotation marks omitted); SSR 96-7p.

### 2.   Analysis

Plaintiff contends that a remand or reversal is warranted because the ALJ improperly evaluated her credibility. (Plaintiff's Motion at 5-10). The Court disagrees.

First, the ALJ properly discounted the credibility of plaintiff's statements because the alleged severity of plaintiff's subjective complaints was inconsistent with plaintiff's daily activities. See Burrell, 775 F.3d at 1137 ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination.") (citation omitted). For example, as the ALJ noted (AR 28), contrary to her allegations of disabling symptoms, plaintiff reported that she was able extensively to care for her children (*i.e.*, wake her children in the morning and help them get ready for school, take her children to and from school, care for her youngest daughter during the day, feed her children after school and at dinner time, help her children with their homework, and walk with her children or do other exercise) (AR 234-36); she would cook for herself and her children every day for two hours (using only "fresh" ingredients) (AR 236); she would do laundry for three hours, and clean her apartment for three hours (AR 235); she would go out every day, and was able to walk, drive a car, and use public transportation (AR 237); she would shop for groceries every week (AR 237); she was able to pay bills, handle a savings account, and use a checkbook and/or money orders (AR 237); and she would

socialize with her family and others every week (although plaintiff said she "does not like to go anywhere") (AR 238-39).

While plaintiff correctly suggests (Plaintiff's Motion at 7) that a claimant "does not need to be 'utterly incapacitated' in order to be disabled," Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (citation omitted), this does not mean that an ALJ must find that a claimant's daily activities demonstrate an ability to engage in full-time work (*i.e.*, eight hours a day, five days a week) in order to discount the credibility of conflicting subjective symptom testimony. See Molina, 674 F.3d at 1113 ("[An] ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . [e]ven where those activities suggest some difficulty functioning. . . .") (citations omitted); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ may consider daily activities to extent plaintiff's "level of activity [is] inconsistent with [the] . . . claimed limitations"). Here, even though plaintiff stated that she had difficulty functioning, the ALJ properly discounted the credibility of plaintiff's subjective symptom testimony to the extent plaintiff's daily activities were inconsistent with a "totally debilitating impairment." Molina, 674 F.3d at 1113; see, e.g., Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989)). While plaintiff asserts "[t]he mere fact" that she was able to "carr[y] on certain daily activities [] does not in any way detract from her credibility as to his [sic] overall disability" (Plaintiff's Motion at 7-8), the Court will not second-guess the ALJ's reasonable determination to the contrary, even if the evidence could give rise to inferences more favorable to plaintiff. See Rollins, 261 F.3d at 857 (citation omitted).

Second, the ALJ properly discounted plaintiff's credibility due to inconsistencies in plaintiff's own statements and testimony. See Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir.), as amended (1997) (in weighing plaintiff's credibility, ALJ may consider "inconsistencies either in [plaintiff's] testimony or between his testimony and his conduct"); see also Fair, 885 F.2d at 604 n.5 (ALJ can reject pain testimony based on contradictions in plaintiff's testimony). For example, as the ALJ noted (AR 31), although plaintiff testified at the hearing that she could not work, in part, because she would "hear voices" (AR 44), when examined by doctors plaintiff repeatedly denied having auditory hallucinations (AR 286, 353, 357). In addition, contrary to plaintiff's testimony that she was unable to work because she was afraid, heard voices, and was anxious (AR 44), plaintiff told her treating psychiatrist that she had previously not worked due to "difficulty affording child care" (AR 338). As the ALJ also noted (AR 31), plaintiff testified that she had been unable to complete classes in English because her other work at the time "was too stressful" (AR 53-54), but during an earlier psychological assessment plaintiff suggested that her inability to "pursue her English skills" was actually due to difficulty with child care issues (*i.e.*, plaintiff said she might pursue classes once her three-year-old child was in preschool) (AR 352).

Third, the ALJ properly discounted plaintiff's credibility based on plaintiff's failure to seek a level of treatment that was consistent with the alleged severity of plaintiff's subjective symptoms. See Molina, 674 F.3d at 1113 (when assessing credibility ALJ may properly rely on claimant's "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.") (citations and internal quotation marks omitted). Here, as the ALJ noted, despite plaintiff's complaints of disabling psychological symptoms, there is very little evidence of any noteworthy psychiatric treatment between approximately May 2011 and January 2012. (AR 31, 337-39 [May 12, 2011 initial

psychiatric evaluation of plaintiff by Dr. Michelle Pietryga], 327, 346 [February 16, 2012 letter from Dr. Pietryga noting that plaintiff "began receiving psychiatric services on 5/12/11," was "currently" being treated with medication, and had a "medication follow up visit on 1/12/12"], 381 [conclusory reference in September 24, 2011 treatment note to "appt. with psychiatrist this month"]).

Finally, the ALJ properly discredited plaintiff's subjective complaints due, in part, to the absence of supporting objective medical evidence. Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). For example, as the ALJ noted, the record suggests that plaintiffs psychological symptoms had been sufficiently managed with medication. (AR 31; see AR 381 [September 24, 2011 treatment note that plaintiff's "depression [was] well-controlled. . . ."]); see, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."), cert. denied, 552 U.S. 1141 (2008) (citation omitted); Warre v. Commissioner of Social Security Administration, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.") (citations omitted). As the ALJ also noted, unremarkable objective findings from psychological evaluations of plaintiff do not support more significant mental limitations than the ALJ assessed for plaintiff. (AR 31; see AR 302-03, 334, 338, 353, 357, 365-66, 369, 374-75, 380-81, 386). Although plaintiff appears to argue that the medical evidence actually supports her subjective complaints (Plaintiff's Motion at 8-10), the Court will not second guess the ALJ's reasonable interpretation to the contrary. See Rollins, 261 F.3d at 857 (citation omitted).

Accordingly, a remand or reversal on this basis is not warranted.

///

### C. The ALJ Did Not Materially Err in Determining That Plaintiff Could Perform Her Past Relevant Work

#### 1. Pertinent Law

At step four, claimants have the burden to show that they no longer have the capacity to perform their past relevant work. Pinto, 249 F.3d at 844. The Commissioner may deny benefits at step four if the claimant can still perform (1) a specific prior job as "actually performed"; or (2) the same kind of work as it is "generally performed" in the national economy. Pinto, 249 F.3d at 845 (citing SSR 82-61); SSR 82-62 at *3. Although claimants have the burden of proof at step four, an ALJ's determination at step four still "must be developed and explained fully" and, at a minimum, contain the following specific findings of fact: (1) the claimant's residual functional capacity; (2) the physical and mental demands of the past relevant job/occupation; and (3) that the claimant's residual functional capacity would permit a return to his or her past job or occupation. Pinto, 249 F.3d at 844-45; SSR 82-62 at *3-*4.

At step five, the Commissioner has the burden to show that other work exists in significant numbers in the national economy that the claimant can do, taking into account the claimant's residual functional capacity, age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(a)(4)(v) & (g), 404.1560(c); 20 C.F.R. §§ 416.920(a)(4)(v) & (g), 416.960(c); see Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (describing "legal framework for Step Five") (citations omitted). The Commissioner may satisfy this burden, depending on the circumstances, either by (1) referring to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"); or (2) eliciting testimony from a vocational expert. See Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1100-01).

When a claimant suffers only exertional (strength-related) limitations, the ALJ must consult the Grids at step five. Lounsburry v. Barnhart, 468 F.3d 1111,

1115 (9th Cir.), as amended (2006).  When a claimant suffers only non-exertional limitations, the Grids are generally inappropriate and the ALJ must rely on other evidence.[2]  Id.; see also Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573, 577 (9th Cir. 1988) ("A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines.  In such a case, the guidelines would be inapplicable.").  When a claimant suffers from both exertional and non-exertional limitations, the ALJ must first determine whether the Grids mandate a finding of disability with respect to exertional limitations.  See Lounsburry, 468 F.3d at 1116; Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989).  If so, the claimant must be awarded benefits.  Cooper, 880 F.2d at 1155.  If not, and if the claimant suffers from significant and sufficiently severe non-exertional limitations, not accounted for in the Grids, the ALJ must take the testimony of a vocational expert.  Hoopai, 499 F.3d at 1076.

Consequently, "[i]f the grids accurately and completely describe a claimant's particular impairments, an ALJ may apply the grids instead of taking testimony from a vocational expert."  Holohan v. Massanari, 246 F.3d 1195, 1208-09 (9th Cir. 2001) (citing Reddick, 157 F.3d at 729).  Thus, even where, like here, a claimant's limitations are entirely non-exertional, a vocational expert's testimony is not required unless the ALJ determines that such non-exertional limitations are "'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitation."  Hoopai, 499 F.3d at 1076 (citation omitted).  It is within the ALJ's province to determine whether a claimant's non-exertional limitations are sufficiently severe to obviate the need for

---

[2]An ALJ is required to seek the assistance of a vocational expert when the non-exertional limitations are at a sufficient level of severity such that the Grids (which mostly account for exertional limitations) would be inapplicable to the particular case.  Hoopai, 499 F.3d at 1076.  The severity of limitations at step five that would require use of a vocational expert must be greater than the severity of impairments determined at step two.  Id.

testimony from a vocational expert. Sam v. Astrue, 2010 WL 4967718, at *11 (E.D. Cal. Dec. 1, 2010) (citing Desrosiers, 846 F.2d at 577).

### 2. Analysis

Plaintiff appears to contend that the ALJ erred at step four, in pertinent part, by failing to "investigate fully the demands of [plaintiff's] past work and compare them to [plaintiff's] residual mental and physical capabilities. . . ." (Plaintiff's Motion at 11-12). Any failure by the ALJ to thoroughly develop and explain his findings at step four, however, was at most harmless error given the ALJ's alternative determination at step five that plaintiff was not disabled under the framework of Section 204.00 of the Grids ("Section 204.00"). (AR 33-34); see, e.g., Tommasetti v. Astrue, 533 F.3d 1035, 1042-43 (9th Cir. 2008) (ALJ error at step four harmless in light of ALJ's alternative finding at step five that claimant "could still perform other work in the national and local economies that existed in significant numbers"). Thus, for the reasons explained below, a reversal or remand on the asserted basis is not warranted.

Here, substantial evidence supports the ALJ's finding that plaintiff's limitation to simple repetitive tasks "[had] little or no effect" on plaintiff's ability to do "unskilled work at all exertional levels." (AR 33-34). As the ALJ suggested, Dr. Ibraheem essentially opined that plaintiff would have "zero to minimal difficulty" in meeting the basic mental demands of unskilled work.[3] (AR 32-34, 289). Again, Dr. Ibraheem's opinions regarding plaintiff's mental abilities constituted substantial evidence supporting the ALJ's findings. See Tonapetyan, 242 F.3d at 1149; Andrews, 53 F.3d at 1041. In addition, plaintiff does not plausibly challenge the ALJ's assessment that she has the residual functional

---

[3]Basic mental demands for unskilled work include: (1) understanding, carrying out, and remembering simple instructions; (2) responding appropriately to supervision, co-workers and usual work situations; and (3) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521(b), 416.921(b); SSR 85-15 at *4.

capacity to perform the full range of work at all exertional levels. Moreover, as discussed above, the ALJ properly discredited plaintiff's statements that her subjective symptoms were more limiting.

Where, like here, a claimant is limited to unskilled work, but otherwise retains the ability to perform a full range of work at all exertional levels, the Grids alone accurately and completely account for the plaintiff's particular impairments. See Sam, 2010 WL 4967718, at *11 ("An individual with solely non-exertional limitations who is capable of performing the full range of unskilled work is capable of performing jobs that exist in significant numbers [in the national economy].") (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 203.00(a)); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 204.00 ("[A]n impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse."). Therefore, here, the ALJ properly found plaintiff not disabled under the framework of Section 204.00. See, e.g., Hoopai, 499 F.3d at 1077 (holding that substantial evidence supported ALJ's conclusion that claimant's "depression was not a sufficiently severe non-exertional limitation that prohibited the ALJ's reliance on the [Grids]"; noting that Ninth Circuit "[had] not previously held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation"); Sam, 2010 WL 4967718, at *10-*11 (ALJ properly relied on Section 204.00 to find plaintiff not disabled based on conclusion that plaintiff's limitation to simple, repetitive tasks "had little or no effect on the occupational base of unskilled work at all exertional levels"); cf., e.g., Landa v. Astrue, 283 Fed. Appx. 556, 558 (9th Cir. 2008) (substantial evidence supported ALJ's determination that claimant's "depression was not a sufficiently severe non-exertional limitation that required the assistance of a vocational expert" where

claimant was found "moderately limited" in only two of the twenty categories of mental residual functional capacity assessment).

Accordingly, a remand or reversal on this basis is not warranted.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  December 2, 2015

                                                    /s/
                                 Honorable Jacqueline Chooljian
                                 UNITED STATES MAGISTRATE JUDGE